Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Criminal No. 16-0380 (ES) |
| v. | OPINION |
| **AHMAD MANN** | |

**SALAS, DISTRICT JUDGE**

Before the Court is defendant Ahmad Mann's ("Defendant") motion for compassionate release (D.E. No. 136 ("Motion" or "Mot.")). The Government opposes the Motion. (D.E. No. 146 ("Opp. Br.")). Having considered the parties' submissions, the Court decides the Motion without oral argument. *See* Fed. R. Crim. P. 43(b)(4); *United States v. Styer,* 573 F.3d 151, 154 (3d Cir. 2009). For the following reasons, the Court DENIES the motion.

**I.  BACKGROUND**

On January 31, 2017, Defendant pled guilty to knowingly and intentionally conspiring and agreeing with others to distribute, and to possess with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin, contrary to Title 21, U.S.C. §§ 841(a)(1) and (b)(1)(B) and in violation of 21 U.S.C. § 846. (D.E. Nos. 84 & 96). On September 25, 2017, the Court sentenced Defendant to a term of 170 months of imprisonment to be followed by four years of supervised release. (D.E. Nos. 108 & 110). Defendant is currently serving out his sentence at FCI Loretto. (Opp. Br. at 5). His projected release date is July 25, 2027. (*Id.*).

Defendant now moves this Court for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A) on the basis of his underlying medical conditions and the COVID-19 pandemic.

(*See generally* Mot.).[1]  The Government opposes the Motion.

## II. LEGAL STANDARDS

Once a term of imprisonment has been imposed, the Court may modify it only under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797–98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)).  Relevant here, 18 U.S.C. § 3582(c)(1) provides that in any case:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> > (i) extraordinary and compelling reasons warrant such a reduction;
> >
> > [. . .]
> >
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The United States Sentencing Commission has promulgated a policy statement that, in relevant part, allows a court to grant compassionate release or a sentence reduction where: (i) extraordinary or compelling reasons warrant a reduction in a defendant's sentence; (ii) the defendant is not a danger to the safety of others or to the community; and (iii) release from custody complies with the section 3553(a) factors. *United States v. Brummett*, No. 07-0103, 2020 WL 1492763, at *2

---

[1] Defendant filed his *pro se* motion on September 22, 2020. (D.E. No. 136). Pursuant to the District of New Jersey's Standing Order 2020-08, the Court informed the Office of the Federal Public Defender ("FPD") of the pending *pro se* motion and allowed counsel an opportunity to filed renewed motion papers. In December 2020, the Court received an email from the FPD which the Court interpreted as the FPD's acceptance of this case for purposes of the pending motion. Accordingly, the Court entered a text order terminating the *pro se* motion and directing the parties to meet and confer to prepare a briefing schedule for a renewed motion. (D.E. No. 139). The parties never responded to the Court's Order and instead, on January 29, 2021, the FPD filed a letter explaining that it would not be entering an appearance in this case. (D.E. No. 144). The Court then reinstated the *pro se* motion and ordered the Government to respond. (D.E. No. 146).

(E.D. Ky. Mar. 27, 2020) (citing U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 (U.S. SENTENCING COMM'N 2018)).

## III. ANALYSIS

### A. Exhaustion

Before proceeding to the merits of a motion for a reduction in sentence, a defendant must meet section 3582(c)(1)(A)'s exhaustion requirement, which requires either that that the defendant has exhausted all administrative remedies, or that, since the submission of a request to the warden, 30 days have passed without a decision being rendered. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

The Government does not dispute that Defendant satisfied this exhaustion requirement by submitting a request for compassionate release to the warden at his facility more than thirty days prior to his filing the Motion. (*See* Mot. at 1; Opp. Br. at 14). Accordingly, the Court turns to the merits of the Motion.

### B. Extraordinary and Compelling Circumstances

Congress directed the Sentencing Commission to define the "extraordinary and compelling reasons" standard. *United States v. Alexander*, No. 19-0032, 2020 WL 2507778, at *3 (D.N.J. May 15, 2020). The Sentencing Commission issued a policy statement in which an application note lists three specific circumstances that qualify as extraordinary and compelling, one of which is potentially relevant here: the defendant has a terminal illness or a serious medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. *See* U.S.S.G. § 1B1.13, Application Note 1(A)–(C). In addition, the policy statement includes a catchall provision, which provides that "other reasons" may be sufficient if "[a]s determined by the Director of the Bureau

3

of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in [the enumerated] subdivisions." *Id.*, Application Note 1(D).[2]

In the wake of COVID-19, courts have consistently considered two components in connection with the extraordinary and compelling circumstances analysis: "(a) identification of a medical condition that renders the defendant particularly vulnerable to serious consequences if infected with COVID-19; and (b) the likelihood of COVID-19 infection, with particular reference to conditions in the institution in which the defendant is incarcerated." *United States v. Moore*, No. 19-0101, 2020 WL 4282747, at *3 (D.N.J. July 27, 2020).

i. **Medical Conditions**

Defendant claims that he is uniquely threatened by COVID-19 because he suffers from hypertension, obesity, and "respiratory infections." (Mot. at 2). The Government disputes the existence of certain conditions and the severity of other conditions. (Opp. Br. at 14–15). Neither side has provided the Court with medical records to support their position. Nevertheless, because the Court ultimately denies the motions on other grounds, the Court will accept the facts as presented in the parties' briefs for argument purposes.

In the context of COVID-19-based requests for compassionate release, courts have referred to certain lists published by the Centers for Disease Control (CDC) as guideposts for evaluating

---

[2] Because Section 1B1.13 was not updated after the First Step Act was passed, it does not address motions made by a defendant. As a result, there has been a debate as to whether the policy statement is applicable to motions made by a defendant and whether the court, as opposed to the BOP, can determine what falls into the catchall provision. There appears to be a growing consensus that Section 1B1.13 does not constrain the court's discretion. *See United States v. Brooker*, 976 F.3d 228 (2nd Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) ("When a defendant exercises his new right to move for compassionate release on his own behalf, in other words, § 1B1.13 does not apply."); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) (holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("And because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion.").

the severity of medical conditions. *See e.g.*, *United States v. Dent*, No. 18-20483, 2020 WL 4783921, at *3 (E.D. Mich. Aug. 17, 2020) (relying on the CDC's classifications to conclude that defendant's cited medical condition was insufficient to meet the extraordinary and compelling standard); *United States v. Henries*, No. 00-0788, 2020 WL 4727090, at *2 (D.N.J. Aug. 14, 2020) (same); *United States v. Henry*, No. 04-0004, 2020 WL 4748537, at *5 (D. Md. Aug. 17, 2020) ("This Court's analysis of an individual's virus-related concerns is heavily guided by the CDC's published risk factors for incurring a severe, life-threatening case of COVID-19."). The CDC's guidance has changed throughout the course of the pandemic. Currently, the CDC identifies various medical conditions which "can make you more likely to get severely ill from COVID-19." *See People With Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Apr. 29, 2021) (last visited May 7, 2021) ("CDC Medical Conditions List").

The CDC identifies two of Defendant's alleged medical conditions—obesity and hypertension—as conditions that "can" make a person "more likely to get severely ill from COVID-19." *Id.* The Government does not challenge the fact that Defendant's height and weight render him medically obese[3], and the Government acknowledges that since the start of the COVID-19 pandemic, Defendant has had "consistently elevated" blood pressure readings. (Opp. Br. at 14–

---

[3] According to the Government, as of January 2021, Defendant weighed approximately 225 pounds. (Opp. Br. at 14). Based on his weight and height of six feet, Defendant's body mass index (BMI) is 30.5, placing him just over the "overweight" weight status category and into the "obese" weight status category. *Adult BMI Calculator*, CDC, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited May 7, 2021); *see also* CDC Medical Conditions List.

15).[4]

As for Defendant's alleged "respiratory infections," the Court notes that certain chronic lung diseases (such as moderate to severe asthma, chronic obstructive pulmonary disease, and others) do appear on the CDC's list of conditions that can make a person more likely to get severely ill from COVID-19. However, Defendant has not identified any of the particular conditions appearing on the CDC's list and has instead alleged to suffer from non-descript respiratory infections. (Mot. at 2). Without more information, the Court cannot conclude that such a condition places Defendant at an increased risk of severe illness from COVID-19.

Based on the foregoing, the Court assumes that Defendant suffers from the conditions alleged and acknowledges that at least some of those conditions appear on the CDC's list of conditions that can place him at an increased risk of severe illness from COVID-19. However, the Court's inquiry does not end here; the Court also must consider the conditions at the facility where the Defendant is housed.

### ii. FCI Loretto

Defendant is currently housed at FCI Loretto—a low security federal correctional institution with an adjacent minimum security satellite camp. *See FCI Loretto*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/lor/ (last visited May 7, 2021). The facility houses a total of 799 inmates. *Id.* Since the onset of the pandemic, FCI Loretto has had 687 inmates and 65 staff members test positive for COVID-19; those individuals have since recovered. *See COVID-19 Cases*, FEDERAL BUREAU OF PRISONS,

---

[4] The Government does argue that Defendant's conditions are not severe and do not constitute extraordinary and compelling reasons for a sentence reduction. Specifically, the Government points to the fact that Defendant is only "borderline medically obese," and that Defendant does not appear to suffer from "chronic hypertension." (Opp. Br. at 14–15). The Court does not evaluate the severity of Defendant's conditions because the existence of the conditions is what places Defendant on the CDC's list.

https://www.bop.gov/coronavirus/ (last visited May 7, 2021).  As of this writing, the facility has five inmates and one staff member who are currently infected with COVID-19.  *Id.*  Although the facility's current number of positive COVID-19 cases is fairly low, it appears that, at one point during the pandemic, the virus infiltrated the facility and infected a high percentage of the facility's inmates.[5]

Based on all of the foregoing, including Defendant's alleged medical conditions and the conditions at FCI Loretto, the Court assumes, without finding[6], that Defendant has passed the initial threshold of demonstrating extraordinary and compelling reasons for release.  The Court nevertheless denies Defendant's Motion because it finds that the section 3553(a) factors and dangerousness considerations weigh against his immediate release.

C. **Section 3553(a) Factors**

Section 3553(a) directs the Court to impose a sentence that is sufficient, but not greater than necessary, to further the purposes of sentencing; *i.e.*, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public.  18 U.S.C. §§ 3553(a)(1), (a)(2)(A)-(D).  Additionally, the Court must consider, *inter alia*, the nature and circumstances of the offense and the defendant's history and characteristics.  *Id.* § 3553(a)(1).

---

[5] Since Defendant filed his Motion, the nation has made great strides in vaccine development and rollout.  There are currently three available vaccines, each of which has proven highly effective at preventing COVID-19 illness in persons who have been fully inoculated.  *See Different COVID-19 Vaccines*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines.html (last updated Apr. 23, 2021) (last visited May 7, 2021).  As of this writing, the BOP reports complete inoculations for 128 staff members and 351 inmates at FCI Loretto.  *See COVID-19 Vaccine Implementation*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited May 7, 2021).  Nevertheless, there is no indication that Defendant is fully vaccinated, and there is thus no basis for the Court to conclude that his risk of serious illness from COVID-19 is mitigated by this data.

[6] The Court withholds a finding based on a lack of substantiating evidence relating to the Defendant's medical conditions.

On September 28, 2017, the Court sentenced Defendant to a term of imprisonment of 170 months, to be followed by a term of supervised release of four years, with special conditions. (D.E. No. 110). Prior to doing so, the Court determined that Defendant's guidelines sentencing range was 188 to 235 months of imprisonment and four to five years of supervised release. (Sentencing Tr. at 4:17–5:8).

In imposing a sentence of 170 months of imprisonment, the Court considered the very serious nature of the crime committed, and Defendant's specific involvement in the crime. In particular, the Court described the opioid epidemic and the harm that illegal drug dealing causes to society. (*Id.* at 27:4–13). The Court also discussed the Defendant's association with the New Jersey Grape Street Crips, and the fact that Defendant was dealing very large quantities of heroin as a willing participant in the scheme. (*Id.* at 26:4–27:17). The Court also considered the need to promote respect for the law and to provide just punishment. (*Id.* at 27:18–28:25). On this score, the Court stated that it was not clear whether Defendant understands or respects the laws, citing to his criminal behavior dating back to 1999. (*Id.* at 28:18–20). With respect to deterrence, the Court outlined Defendant's criminal history as laid out in the presentence report and made the point that the Defendant has had the benefit of "breaks" throughout his lifetime, and those breaks did not "help[] him one bit." (*Id.* at 29:1–31:8). In other words, the Court explained that none of Defendant's sentences adequately deterred the Defendant from engaging in further criminal conduct, and the Court determined that there was a "need for a significant sentence for deterrent purposes in particular, not only to specifically deter this defendant, but to deter any defendants that may be engaged in similar conduct." (*Id.* at 31:6–16). As to Defendant's history and characteristics, the Court noted its appreciation for the Defendant caring for his family but admonished the way he had done so—through illegal drug dealing. (*Id.* at 31:20–25). The Court

8

also considered the possibility that addiction may have been a contributing factor involved in Defendant's criminal conduct. (*Id.* at 32:1–5). Finally, the Court considered the sentences it had given to some of Defendant's co-defendants and co-conspirators. (*Id.* at 32:10–15; *see also id.* at 14:2–15:17). Based on all of the foregoing, the Court sentenced Defendant to 170 months of imprisonment, representing a modest variance from the guidelines range.

To reduce Defendant's sentence now would undermine the important factors that the Court considered at sentencing and still hold true today—namely, the seriousness of the offense, the need to promote respect for the law, and necessity for specific and general deterrence.[7] The Defendant is not scheduled to be released until July 25, 2027 (Opp. Br. at 5), meaning that he still has approximately 75 months or 44% of his sentence remaining. In other words, granting Defendant's request for compassionate release would significantly reduce his sentence, and the Court finds that doing so would undermine the considerations embodied in section 3553(a) as discussed by the Court at sentencing (and *supra*). *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (holding that the time remaining on a defendant's sentence may inform whether immediate release would be consistent with the 3553(a) factors).

### D. Dangerousness

Finally, the Court must evaluate dangerousness pursuant to 18 U.S.C. § 3142(g). In connection with pretrial detention, the dangerousness inquiry involves (i) the nature and circumstances of the offense; (ii) the weight of the evidence against the person; (iii) the history and characteristics of the person; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. The second factor is not relevant here, as it is mooted by Defendant's conviction. Factors one and three largely duplicate the section

---

[7] Defendant has not provided any evidence of his rehabilitation efforts and has provided no other evidence to mitigate the Court's concerns.

3553(a) considerations discussed above, and for the same reasons, weigh against Defendant's immediate release. Factor four, the nature of the danger, is not favorable to Defendant considering the seriousness of his offense and his criminal history. *See United States v. Pass*, No. 10-0739, 2020 WL 2332001, at *3 (E.D. Pa. May 11, 2020).

## IV.	CONCLUSION

In short, even assuming Defendant has demonstrated extraordinary and compelling reasons for a potential sentence reduction, the requisite analysis under section 3553(a), as well as the dangerousness considerations, constrain the Court to deny the requested relief under 18 U.S.C. § 3582(c)(1)(A). Accordingly, Defendant's motion is DENIED. An appropriate Order accompanies this Opinion.

Dated: May 7, 2021								/s/ *Esther Salas*	
												**Esther Salas, U.S.D.J.**